# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **RODNEY JULIUS OWENS** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    Civil Action No.  **3:06-cv-00540-MEF-SRW** |
| | ) |
| **JAY JONES, et. al.,** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' SPECIAL REPORT

COME NOW Sheriff Jay Jones, Major Cary Torbert, Jr.[1], and Nurse Linda Stewart,

Defendants in the above-styled cause[2], and submit their Special Report to the Court.

## INTRODUCTION

Plaintiff was incarcerated in the Lee County Detention Center from February 3, 2006 to

July 10, 2006 on charges of receipt of stolen property, burglary and theft of property. (Exhibit

A, Inmate File of Rodney Julius Owens, "Inmate File," Conviction Report, Inmate Booking

Sheet, Inmate Release Sheet)  On June 9, 2006, Plaintiff pled guilty to the burglary charge and

was so convicted. (Ex. A, Conviction Report). On June 16, 2006, Plaintiff filed his Complaint

in the United States District Court for the Middle District of Alabama. On July 10, 2006,

Plaintiff was transferred to Kilby Correctional Facility. (Ex. A, Inmate Release Sheet.)  Thus,

Plaintiff was incarcerated in the Lee County Detention Center as both a pre-trial detainee and a

convicted inmate.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges in his Complaint that, on May 27, 2006, he fell while getting out of the

---

[1]  Major Cary Torbert, Jr., was incorrectly designated in the Plaintiff's Complaint as Major James Torbert.
[2] Although the Plaintiff also named Dr. John McFarland as a Defendant in his lawsuit, Dr. McFarland has not been served.

shower, spraining his left ankle and "pull[ing] something" in his lower back. (Plaintiff's Complaint, pp. 2-3.) Plaintiff alleges that his fall was due to the lack of a handrail in the shower. (Plaintiff's Complaint, p. 2.) He also states that his ankle was not x-rayed until June 13, 2006 and that his back has not been x-rayed although he has requested that it be x-rayed. (Plaintiff's Complaint, p. 3.) Plaintiff requests that he be compensated for medical bills, that he be awarded money damages, that handrails be placed outside of showers and that the persons responsible for his "suffering" be terminated. (Plaintiff's Complaint, p. 4.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

Sheriff Jay Jones has delegated the responsibility for the day-to-day functions of the Lee County Detention Facility to Major Cary Torbert, Jr., the Chief Deputy of Corrections of the Lee County Detention Facility. As Sheriff of Lee County, Jay Jones is responsible for promulgating the policies governing the Lee County Detention Facility. (Exhibit B, Affidavit of Jay Jones[3], "Jones Aff.," ¶ 5.)

---

[3]   Jay Jones is the duly elected Sheriff of Lee County, Alabama, and has served in such capacity since 1999. (Ex. B, Jones Aff. ¶ 2.)

It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Center are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotional well-being. (Ex. B, Jones Aff. ¶ 6; Exhibit C, Affidavit of Cary Torbert, Jr.[4], "Torbert Aff.," ¶ 5.) Medical care rendered to inmates in the Lee County Detention Center is delivered under the direction of a licensed health care provider. (Ex. B, Jones Aff. ¶ 7; Ex. C, Torbert Aff. ¶ 6.) No health care personnel, Detention Center officer, or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services. (Ex. B, Jones Aff. ¶ 8; Ex. C, Torbert Aff. ¶ 7.) Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively. (Ex. B, Jones Aff. ¶ 9; Ex. C, Torbert Aff. ¶ 8.) Inmates will be guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority. (Ex. B, Jones Aff. ¶ 10; Ex. C, Torbert Aff. ¶ 9.)

It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Center to request health care services at any time. (Ex. B, Jones Aff. ¶ 11; Ex. C, Torbert Aff. ¶ 10.) Two methods may be utilized by inmates incarcerated in the Lee County Detention Center in order to secure health care services: (1) <u>Verbal Request</u>: An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time. (2) <u>Written Request</u>: An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff. (Ex. B, Jones Aff. ¶ 12; Ex. C, Torbert Aff. ¶ 11.) Requests for medical treatment will be accepted by members of the Detention Center staff at any time. (Ex. B, Jones

---

[4] Cary Torbert, Jr. serves as Chief Deputy of Corrections of the Lee County Detention Facility and has obtained the rank of Major. He has worked with the Lee County Sheriff's Office for over 32 years. (Torbert Aff. ¶ 2.)

Aff. ¶ 13; Ex. C, Torbert Aff. ¶ 12.)  When a request for medical treatment is made to a member of the Detention Center staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request.  It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner.  Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.  (Ex. B, Jones Aff. ¶ 14; Ex. C, Torbert Aff. ¶ 13.)  Medical requests of an emergency nature are to be handled immediately.  (Ex. B, Jones Aff. ¶ 15; Ex. C, Torbert Aff. ¶ 14.)  As part of the booking process, inmates are informed of the methods by which they may maintain medical treatment.  (Ex. B, Jones Aff. ¶ 16; Ex. C, Torbert Aff. ¶ 15.)

The Detention Center nurses, under the direction of the Detention Center Administrator, are charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Center.  (Ex. B, Jones Aff. ¶ 17; Ex. C, Torbert Aff. ¶ 16.)  All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Center official.  Should the physician request, a Detention Center officer will be present for any and all examinations the treating physician deems appropriate.  (Ex. B, Jones Aff. ¶ 18; Ex. C, Torbert Aff. ¶ 17.)  Sick call is conducted on a scheduled basis by a licensed practical nurse and is available to all inmates.  All inmates are required to pay a fee for non-emergency treatment.  Inmates will not be denied medical treatment.  When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received.  (Ex. B, Jones Aff. ¶ 19; Ex. C, Torbert Aff. ¶ 18.)

On Sunday, May 28, 2006, and Tuesday, May 30, 2006, Plaintiff submitted Inmate Request Slips addressed to Nurse Stewart which stated that Plaintiff fell in the shower and hurt his ankle, which was swollen. (Ex. A, Inmate Request Slips.) Nurse Stewart examined Plaintiff at sick call on May 30, 2006. She gave Plaintiff Motrin on May 30 and May 31 and scheduled him to see Dr. McFarland on May 31, 2006. On May 31, 2006, Plaintiff was examined by Dr. McFarland. Plaintiff told Dr. McFarland that he fell in the shower and hurt his right ankle and back. Dr. McFarland noted that Plaintiff walked into the examination room with a normal gait and with no limp. Dr. McFarland concluded that Plaintiff had sprained his right ankle and had strained a muscle in his lower back. Plaintiff was prescribed Naprosyn, a pain and anti-inflammatory medication, and Dr. McFarland noted that he wanted to recheck Plaintiff if he was not better in one week. Exhibit D, Medical File of Rodney Julius Owens; Exhibit E, Affidavit of John McFarland, "McFarland Aff.," ¶ 4.)

Plaintiff submitted an Inmate Request Slip addressed to Nurse Stewart on June 12, 2006 which stated that he needed his back checked and wanted his back to be x-rayed. Nurse Griffith responded that Plaintiff should tell Dr. McFarland at his next appointment on June 13. (Ex. A, Inmate Request Slips.) Plaintiff was examined by Dr. McFarland again on June 13, 2006. Plaintiff stated that his back and ankle were worse; however, Dr. McFarland observed that Plaintiff walked into the examination room comfortably. Dr. McFarland ordered that Plaintiff's right ankle be x-rayed and that Plaintiff be put on Flexeril, a muscle relaxant, continue to take Naprosyn and be rechecked in one week. Plaintiff's right ankle was x-rayed on June 13, 2006, and no fracture or dislocation was found by the physician who read the x-ray. (Ex. D, Medical File; Ex. E, McFarland Aff. ¶ 5.)

Plaintiff was again examined by Dr. McFarland on June 20, 2006. Plaintiff requested that his back be x-rayed. However, Dr. McFarland explained to Plaintiff that an x-ray of his back would be low yield and would not show anything due to the way Plaintiff stated that he injured his back. McFarland noted that Plaintiff walked with a normal, comfortable gait, that he could raise his leg without pain and had comfortable spontaneous leg swings in a sitting position. Plaintiff was prescribed a flexion splint for his right ankle, told to take Naprosyn and to return for a follow-up appointment in two to three weeks. (Ex. D, Medical File; Ex. E, McFarland Aff. ¶ 6.)

On June 21, Plaintiff submitted an Inmate Request Slip stating that he was filing a grievance against Dr. McFarland and Nurse Stewart for not x-raying his back and for not giving him medications for back pain. (Ex. A, Inmate Request Slips.) Lt. Corey Welch answered Plaintiff's grievance on June 22 by stating that Plaintiff had been treated by a licensed physician. (Ex. A, Inmate Request Slips.) Plaintiff did not appeal Lt. Welch's answer to the grievance. (Ex. A.)

Plaintiff was again examined by Dr. McFarland on July 6, 2006 and instructed to continue to wear his ankle brace for 2 to 3 more weeks. (Ex. D, Inmate Medical File; Ex. E, McFarland Aff. ¶ 7.)

Plaintiffs' medical records show that Plaintiff was administered all mediations prescribed to him. (Exhibit F, Affidavit of Linda Stewart, "Stewart Aff." ¶ 7; Ex. D, Inmate Medical File.)

It is the policy of the Lee County Sheriff's Office to always defer to the instructions of the trained medical professionals on all medical issues, and Major Torbert complied with this policy. (Ex. B, Jones Aff. ¶ 20; Ex. C, Torbert Aff. ¶ 19.) Further, per the policy of the Lee

County Sheriff's Office, Nurse Stewart always follows the instructions of Dr. McFarland on all medical issues and did so with regard to the Plaintiff. (Ex. F, Stewart Aff. ¶ 8.)

Internal grievance procedures at the Lee County Detention Facility are available to all inmates. It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon. (Ex. B, Jones Aff. ¶ 22; Ex. C, Torbert Aff. ¶ 22.) All inmates are provided access to a Lee County Detention Center Inmate Handbook. A copy of this handbook is placed in each cellblock for inmates to review whenever they wish. The inmate handbook states that an inmate may report a grievance on an inmate request form. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. The inmate handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision. (Ex. B, Jones Aff. ¶ 23; Ex. C, Torbert Aff. ¶ 23.)

Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to Major Torbert and up to Sheriff Jones if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not done so. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center. (Ex. B, Jones Aff. ¶ 24; Ex. C, Torbert Aff. ¶ 24.)

It is the policy of the Lee County Sheriff's Office to maintain a healthy environment within the Lee County Detention Center for the benefit of both inmates and the Detention Center staff. (Ex. B, Jones Aff. ¶ 21; Ex. C, Torbert Aff. ¶ 21.) The Plaintiff is not handicapped and does not need safety rails to get in and out of the shower. (Ex. C, Torbert Aff. ¶ 28; Ex. E, McFarland Aff. ¶ 8.) Prior to the date of the alleged fall, the Plaintiff had never made either Sheriff Jones or Major Torbert aware that he had any trouble getting in or out of the shower.

(Ex. B, Jones Aff. ¶ 25; Ex. C, Torbert Aff. ¶ 25.)  The showers at the Lee County Detention Center have rubber mats in front of them to prevent the inmates from slipping when entering or exiting the shower.  (Ex. B, Jones Aff. ¶ 26; Ex. C, Torbert Aff. ¶ 26.)  Dr. McFarland and Nurse Stewart have no duty or authority with regard to any conditions of the Detention Center, such as, but not limited to, the shower facilities.  Dr. McFarland and Nurse Stewart's sole duty and authority is with regard to medical care of inmates.  (Ex. B, Jones Aff. ¶ 31; Ex. C, Torbert Aff. ¶ 27; Ex. E, McFarland Aff. ¶ 10; Ex. F, Stewart Aff. ¶ 5. )

The records show that every time the Plaintiff made a request regarding his ankle and back, the medical staff addressed his concerns.  (Ex. D, Medical File, Ex. A, Inmate Request Slips.)  The Plaintiff was also given his prescribed medications.  (Ex. D, Medical File, Medication Sheet-Administration Records.)

Sheriff Jones and Major Torbert have complied with all policies and procedures of the Lee County Detention Facility.  They are not aware of nor have they authorized or allowed any deviation from said policies and procedures.  (Ex. B, Jones Aff. ¶ 32; Ex. C, Torbert Aff. ¶ 34.)

## II.    LAW

### A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d

1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

### B. Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.

#### 1. Plaintiff has failed to exhaust all Administrative Remedies.

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e (a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility.  Despite the availability of a grievance procedure at the Lee County Detention Facility, the Plaintiff did not utilize the appeals process at the Lee County Detention Facility.  Second, he has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring

prisoners to affirmatively show that they have exhausted administrative remedies).

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Lee County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies, stating that the judicially recognized futility and inadequacy exceptions that existed under former § 1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA); Booth v. Churner, 532 U.S. 731 (2001) (concluding that the exhaustion of administrative remedies is now mandatory and courts cannot excuse exhaustion).

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**
>
> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002).  Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his Complaint is due to be dismissed.

**C.    Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and jail officials of Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations

omitted).

**1.    The Plaintiff's Constitutional Rights were not violated.**

**a.    Medical Claim**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, the evidence shows that the Plaintiff received medical care by trained medical professionals and that Defendants' promptly responded to Plaintiff's requests for medical attention. The records and the Defendants' affidavits affirmatively show that the Plaintiff has received constitutionally adequate medical care at the Lee County Detention Facility.

An inmate does not have a right to a ***specific*** kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's

constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff.  See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").  The evidence is clear that the Plaintiff was given medical treatment.  Dr. McFarland used his sound medical judgment in determining the course of treatment for the Plaintiff's ankle and back.  Dr. McFarland has testified that an x-ray of Plaintiff's back was unnecessary because it would not show good results The Plaintiff's desire for a different type of treatment does not rise to the level of a constitutional violation.

Furthermore, Sheriff Jones and Major Torbert do not have any kind of medical education, training or experience.  They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates.  While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim.  In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse,

and the prison's medical director[5] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea.  302 F.3d at 847.  Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations.  "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions."  302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995).  Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription."  Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000).  Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision.  Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was treated by the Jail Nurse and the Jail Medical doctor for all his medical problems.  Sheriff Jones and Major Torbert, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of nurses and doctors.  Furthermore, Nurse Stewart, like the director in Meloy, cannot, and should not, second guess the judgment of Dr. McFarland.  The evidence shows that Dr. McFarland's sound medical orders were followed at all times.  Therefore, Defendants in no way violated the Plaintiff's constitutional rights.

### b.    Conditions of Confinement Claims

In order to establish a conditions of confinement claim Plaintiff "must prove three elements:    (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to

---

[5] The medical director was a trained and licensed nurse.  302 F.3d at 846.

that condition, and (3) causation.  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element).  Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry.  Wilson v. Seiter, 502 U.S. at 290.  In the instant case, the Plaintiff cannot establish either the objective or subjective components of his conditions of confinement claims.

With regard to the objective component, the Eleventh Circuit has held that "*extreme deprivations are required to make out a conditions-of-confinement claim*" under the Eighth Amendment.[6]  Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original). "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "[T]he Constitution does not mandate comfortable prisons."  Chandler, 379 F.3d. at 1289.  In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual."

### (1.)    Objective Component

It is clear that the condition alleged in the Plaintiff's Complaint was not "extreme" as to rise to the level of a constitutional violation.  The Plaintiff complains that he fell getting out of the shower because of the lack of safety rails in the shower.  However, the Plaintiff is not

---

[6] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.  But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving pretrial detainees.'"  Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citations omitted).

handicapped and does not need safety rails to get in and out of the shower.  Further, the showers at the Lee County Detention Center have rubber mats in front of them to prevent the inmates from slipping when entering or exiting the shower.  One district court in the Eleventh Circuit has recently recognized:  "Slip and fall accidents do not give rise to federal causes of action." Mallard v. Roberts, 2006 WL 1431570, *4 (M.D. Ga. May 19, 2006); see also Reynolds v. Powell, 370 F.3d 1028, 1031 (10th Cir. 2004) (holding that slippery prison floors do not pose a substantial risk of serious harm); LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment.") (citations omitted) (internal quotation marks omitted).  The Tenth Circuit in Reynolds reasoned that, although slippery floors are potentially hazardous, the public at large are daily faced with such a risk.  Similarly, members of the public at large do not have safety rails installed in their showers.  Therefore, just like in Reynolds, the lack of safety rails does not present a risk of serious harm.

Clearly, the Plaintiff's conditions of confinement are not extreme as would form a constitutional violation.

### (2.)    Subjective Component

Even if the Plaintiff's conditions of confinement were objectively "cruel and unusual," there must still be evidence of subjective deliberant indifference on the part of each Defendant. "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs."  LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).  "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'"  Id. (quoting Duckworth v. Franzen, 780 F.2d 645,

653 (7th Cir. 1985), <u>cert. denied</u>, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. <u>Id.</u> at 837-839. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. <u>LaMarca</u>, 995 F.2d at 1536.

In the instant case, even if there were an excessive risk to his health or safety, the Plaintiff has not alleged that any of the Defendants knew of or disregarded that risk. The Plaintiff is not handicapped and does not need safety rails to get in and out of the shower. The showers at the Lee County Detention Center have rubber mats in front of them to prevent the inmates from slipping when entering or exiting the shower. Prior to the date of the alleged fall, the Plaintiff had never made either Sheriff Jones or Major Torbert aware that he had any trouble getting in or out of the shower. As to Dr. McFarland and Nurse Stewart, the evidence is clear that he has neither duty nor authority with regard to the conditions of the Detention Center, and his only involvement with inmates is in rendering medical care. Therefore, the Plaintiff has failed to sufficiently allege how each Defendant was deliberately indifferent to any alleged conditions. The Seventh Circuit addressed a similar situation in <u>Murphy v. Walker</u>:

> [The Plaintiff] alleges that the shower had no rails, floor mats, or other safety
> devices, making it unsafe for showering. He does not claim, however, that county

> officials intentionally or recklessly maintained the shower in an unsafe condition, nor does he allege that they were aware of previous accidents in the jail shower. Thus, at most, Murphy is claiming that county officials negligently provided unsafe shower facilities, which is insufficient to state a claim under the Due Process Clause.

51 F.3d 714, 719 (7th Cir. 1995); see also Payton v. Epps, 82 Fed. Appx. 399, 399 (5th Cir. 2003) ("[A]llegation that prison officials were negligent for failing to place slip guards and guard rails in the showers where he is housed fails to state a claim because a claim for negligence does not establish an Eighth Amendment violation."); Gonzalez v. Horsley, 2003 WL 23025457, *1 (N.D. Cal. 2003) (dismissing allegations that the plaintiff fell because the sheriff "'neglected to provide shower safety equipment' such as 'mats' and 'safety rails.'").  The Plaintiff in the instant case has similarly failed to show deliberate indifference on the part of the Defendants.

Because the Plaintiff cannot meet the objective or subjective tests as set forth in Farmer, supra, his conditions of confinement claims are due to be dismissed.

Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim.  Porter v. Nussle, 534 U.S. 516, 528 (U.S. 2002); see also Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996) (noting that the plaintiff "did not allege that he was exposed to disease or suffered any other consequences of the exposure [to raw sewage]" and finding a de minimus imposition that did not amount to a constitutional violation).  The Plaintiff has not alleged that he suffered an injury that is greater than de minimus as a result of the alleged conditions of his confinement.  Accordingly, the Plaintiff cannot sustain a conditions of confinement claim.

### 2.    No clearly established law provided the Defendants with fair warning that their conduct was unlawful.

Assuming, arguendo, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct

was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful.  Therefore, Defendants are entitled to qualified immunity.

### D.    Plaintiff has failed to allege sufficient personal involvement on each claim.

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

### 1.    As to his conditions of confinement claim, the Plaintiff has failed to allege personal involvement on the part of any Defendant.

The Plaintiff has failed to allege that any of the Defendants were in any way personally

involved in any alleged violation of Plaintiff's constitutional rights concerning any of the conditions of his confinement.  Plaintiff has offered no allegation demonstrating that the Defendants were in any way involved in the actions he claims were constitutionally infirm.  There are absolutely no facts to show that these Defendants personally participated in these claims, nor does the Plaintiff allege specifically how these Defendants violated his constitutional rights in regard to these claims.  The Plaintiff offers no allegations specific to any of the Defendants and does not allege that any of the Defendants were aware of the allegedly unconstitutional lack of handrails.  And as to Dr. McFarland and Nurse Stewart, it is obvious that, as medical staff, they have no duty or authority over handrails in the jail showers.  As such, Plaintiff's conditions of confinement claims are due to be dismissed.

The lack of factual allegations against the Defendants makes it clear that the Plaintiff is attempting to hold the Defendants liable on the theory of *respondeat superior*.  To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269.   The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights."

Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).  In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of the Defendants.  As such, Plaintiff's conditions of confinement claims are due to be dismissed.

> **2.    As to his medical claims, the Plaintiff has failed to allege personal involvement on behalf of Sheriff Jones or Major Torbert.**

The Plaintiff has failed to allege that Sheriff Jones or Major Torbert was in any way personally involved in his medical claims.  Plaintiff has offered no allegation demonstrating that Sheriff Jones or Major Torbert was in any way involved in the actions he claims were constitutionally infirm with regard to these claims.  There are absolutely no facts in the Complaint to show that Sheriff Jones or Major Torbert violated Plaintiff's constitutional rights in regard to these claims.  In fact, there is no mention of anything Sheriff Jones or Major Torbert allegedly did or failed to do in the entire body of the Complaint.  As such, Plaintiff's medical claims are due to be dismissed against Sheriff Jones and Major Torbert.

The lack of factual allegations against Sheriff Jones and Major Torbert make it clear that the Plaintiff is attempting to hold Sheriff Jones and Major Torbert liable on the theory of *respondeat superior*.  To the extent that Plaintiff's claims are an attempt to hold Sheriff Jones and Major Torbert liable under a *respondeat superior* theory, his claim must similarly fail.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need

to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269. The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of Sheriff Jones and Major Torbert. As such, Plaintiff's medical claims are due to be dismissed as to Sheriff Jones and Major Torbert.

> **F.    This Court lacks subject matter jurisdiction over the Plaintiff's claims for injunctive relief.**

Subject matter jurisdiction is a "threshold issue" which a Plaintiff must establish to the Court's satisfaction before he may prevail on any of his claims. See generally, Rosado v. Wyman, 397 U.S. 397, 402 (1970); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998). In the instant case, this Court lacks subject matter jurisdiction over the Plaintiff's claims for injunctive relief (his request that safety rails be installed because these claims are moot and because he lacks standing to pursue his claims.

> **1.    Plaintiff's claims for injunctive relief are moot.**

"[A] moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.'" National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005). Because Plaintiff has been released from the Lee County Jail, his claims for injunctive relief are moot. Zatler, at 399 ("In view of [the plaintiff's] subsequent release [from the correctional facility where claims arose], we find that his claims for declaratory and injunctive relief are now moot."); see also Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir.

1985) ("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred. Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects." (citations omitted)); Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (holding that prisoner's claim for injunctive relief was moot and properly dismissed, where prisoner had been transferred from county jail in which unconstitutional conditions allegedly existed); McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." (citation omitted)). Accordingly, the Plaintiff's request that the Lee County Detention Center install safety rails in the showers is moot.

### 2.    The Plaintiff lacks standing to pursue his claims.

A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome. Baker v. Carr, 369 U.S. 186, 204 (1962). The plaintiff must have sustained, or is about to sustain, some direct injury. Golden v. Zwickler, 394 U.S. 103, 109-110 (1969). Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights. 461 U.S. 95, 97 (1983). The plaintiff sought an injunction barring the future use of police chokeholds. Id. 461 U.S. at 98. After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing. Id. 461

U.S. at 99-100.  The Court stated that the plaintiff's standing rested solely on pure speculation that he *might* be stopped by the police, *might* be arrested, and *might* again create a disturbance in the jail and *might* be subjected to another chokehold.  Id. 461 U.S. at 108.  The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold.  Id.

Here, any injunctive relief is equally speculative.  Because he is no longer incarcerated in the Lee County Detention Center, the Plaintiff's claim is, in essence, that he *might* be released from the facility at which he is currently incarcerated, *might* be stopped by police, *might* be arrested by an officer with authority to incarcerate someone in the Lee County Detention Center, that he *might* be booked into the Lee County Detention Center, that he *might* be subjected to the alleged actions and/or conditions made the basis of his Complaint.  Such speculation into future conduct does not grant the Plaintiff standing.  Lyons, 461 U.S. at 108.

Accordingly, the Plaintiff's request for safety rails to be installed is due to be dismissed for lack of standing.

**G.    Summary Judgment Standard**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence

comes from disinterested witnesses.'" <u>Reeves</u>, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[7] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (<u>en banc</u>) quoting <u>Massachusetts Sch. of Law v. American Bar</u>, 142 F.3d 26, 40 (1st Cir. 1998).

### CONCLUSION

Defendants deny each and every allegation made by Plaintiff Rodney Julius Owens in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

### MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 20th day of September, 2006.

<div style="margin-left:40%">

s/Ashley Hawkins Freeman
ASHLEY HAWKINS FREEMAN Bar No.  FRE044
AMANDA KAY MORGAN Bar No. ALL079
Attorneys for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  afreeman@webbeley.com

</div>

---

[7] Although <u>Reeves</u> was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" <u>Reeves</u>, 530 U.S. at 150, <u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-251 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 20th day of September, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

> Rodney Julius Owens
> Lee County Detention Center
> P.O. Box 2407
> Opelika, AL 36801

> **s/Ashley Hawkins Freeman**
> OF COUNSEL